UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-255-MOC

| | | |
|---|---|---|
| BOBBY KIRKPATRICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary

Judgment. (Doc. Nos. 17, 22). Having considered such motions and reviewed the pleadings, the

Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.      Administrative History**

On April 25, 2017, Plaintiff filed an application for supplemental security income and

alleged disability beginning April 25, 2017. (Tr. 100, 199–207). The State agency denied

Plaintiff's application initially and upon reconsideration. (Tr. 84–119). An ALJ held a hearing on

February 22, 2019, in response to Plaintiff's written request. (Tr. 12–32). Plaintiff, his attorney,

and an impartial vocational expert (VE) appeared at the hearing. (Tr. 15, 36). On April 22, 2019,

the ALJ decided Plaintiff was not disabled under the Act. (Tr. 15–36).

In the decision, the ALJ specifically noted that he discussed evidence that predates

Plaintiff's alleged onset date to provide context regarding Plaintiff's impairments and his ability

to work during the relevant period, and not to imply a reopening of the Commissioner's prior

March 13, 2017 decision, which found Plaintiff's disability ended on March 1, 2016. (Tr. 20, 61–76). Thus, the relevant period in this case begins on April 25, 2017, Plaintiff's alleged onset date.[1] The Appeals Council denied Plaintiff's request for review. (Tr. 1–6). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.    Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial

---

[1] Plaintiff did not appeal the Commissioner's prior March 2017 decision. Thus, res judicata applies and the Commissioner's prior March 2017 decision is not properly before this Court. 42 U.S.C. § 405(h).

-2-

evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

### IV.    Substantial Evidence

#### a.    Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

#### b.    Sequential Evaluation

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

Case 1:20-cv-00255-MOC   Document 34   Filed 02/07/22   Page 3 of 24

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

  a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

  b. An individual who does not have a "severe impairment" will not be found to be disabled;

  c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

  d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

  e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

In rendering his decision, the ALJ applied the five-step sequential evaluation process set forth in the regulations for evaluating disability claims. See 20 C.F.R. § 404.1520(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity (SGA) since his alleged onset date, (Tr. 17); (2) had the severe impairments of status-post left hip replacement due to Legg-Calve-Perthes disease,[2] osteoarthritis, anxiety, depression, and obesity, (Tr. 17); and (3) did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 18–19).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to: perform sedentary work as defined in 20 C.F.R. § 416.967(a) except he can never climb ladders, ropes, or scaffolds; he can never crawl; he can do no more than occasionally climb ramps and stairs; can no more than occasionally balance, stoop, kneel and crouch; he is able to perform and maintain concentration for simple, routine, repetitive tasks. (Tr. 19–20). The ALJ based his assessment of the RFC on his thorough review of all the evidence. The ALJ found that (4) Plaintiff had no past relevant work (Tr. 25); and (5) there were other jobs existing in significant numbers in the national economy that Plaintiff could perform based on his age, education, work experience, and RFC. (Tr. 26–27).

**V.    Discussion**

Plaintiff contends that the ALJ's RFC analysis was improper because the ALJ: (1) did not consider all of his impairments; and (2) the ALJ did not explain how he considered the

---

[2] Legg-Calve-Perthes disease is a childhood condition that occurs when blood supply to the ball part (femoral head) of the hip joint is temporarily interrupted and the bone begins to die. This weakened bone gradually breaks apart and can lose its round shape. See Overview of Legg-Calve-Perthes disease, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/legg-calve-perthes-disease/symptoms-causes/syc-20374343 (Last visited 8/20/2021).

supportability and consistency factors when evaluating the medical opinion from his primary care provider, Elssie Osei-Nkansah, M.D. In supplemental briefing allowed by the Court, Plaintiff also challenges the constitutionality of the ALJ's decision. See (Doc. Nos. 30, 33).

**A. Plaintiff's Contention that ALJ's RFC Assessment Did Not Consider All of Plaintiff's Medically Determinable Impairments.**

Based on the evidence in record, the ALJ determined that Plaintiff had physical impairments that limited him to performing sedentary work with additional postural limitations. (Tr. 17, 19–20). Accommodating Plaintiff's mental impairments, the ALJ concluded that Plaintiff was able to perform and maintain concentration for simple, routine, and repetitive tasks (Tr. 17, 20). Plaintiff contends that the ALJ's step two determination and the corresponding RFC was incomplete. (Pl. Br. 14-16; Tr. 17, 19–20). However, Plaintiff has the burden of proving disability and producing evidence of it. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a). At step two, it is Plaintiff's burden to show "that he has a medically severe impairment." Bowen v. Yuckert, 107 S. Ct. at 2294 n.5. If, as Plaintiff speculates, he had medically determinable impairments of fibromyalgia, degenerative disc disease, and PTSD that precluded his ability to perform a reduced range of sedentary work, it was Plaintiff's burden to show why he was disabled due to these impairments. (Pl. Br. 14-16; Tr. 17). The ALJ's decision reflects that Plaintiff failed to meet his burden. The ALJ also properly considered the Commissioner's prior decision pursuant to Acquiescence Ruling (AR) 00-1(4). (Pl. Br. 16–18). The ALJ assessed all relevant evidence regarding Plaintiff's impairments and his related symptoms and thoroughly evaluated Plaintiff's ability to perform the relevant work functions outlined in 20 C.F.R. § 416.945 (b), (c) to refute Plaintiff's claims. Cf. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) ("Remand may be appropriate …when an ALJ fails to assess a claimant's capacity to

-6-

perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.).”

**1. Plaintiff Failed to Establish a Medically Determinable Impairment of Fibromyalgia.**

Before determining if an impairment prevents an individual from performing substantial gainful activity, the ALJ must find that they have a medically determinable impairment. 20 C.F.R. §§ 416.905(a), 416.921. “Generally, a person can establish that he or she has an MDI [(medically determinable impairment)] of [fibromyalgia] by providing evidence from an acceptable medical source” who has reviewed their “medical history and conducted a physical examination.” SSR12-2p, 2012 WL 3104869 (July 25, 2012). Contrary to Plaintiff's argument, Dr. Osei-Nkansah, did not diagnose him with fibromyalgia. (Pl. Br. 15, 19, Tr. 328). Instead, Dr. Osei-Nkansah noted that Plaintiff's neurology providers "<u>think</u> he may have fibromyalgia” (emphasis added) (Pl. Br. 15, 19; Tr. 328). To the extent the ALJ erred by failing to explicitly find fibromyalgia was a non-medically determinable impairment, this error is harmless because Plaintiff failed to satisfy his burden, and the ALJ's decision otherwise discusses the underlying evidence justifying this result.

Notably, Plaintiff failed to produce evidence establishing a diagnosis under the American College of Rheumatology Criteria (ACR) diagnostic criteria enumerated in Social Security Ruling 12-2p. <u>See</u> 2012 WL 3104869, at *2–*3 (July 25, 2012). Although, Dr. Osei-Nkansah's physical examination of Plaintiff noted the presence of trigger points, this evidence is not sufficient to support a “history of widespread pain” accompanied by “at least 11 positive tender points [] on physical examination” and evidence that exclude other disorders that could cause the symptoms or signs under the 1990 ACR. (Tr. 328–29). <u>Id.</u> Likewise, Plaintiff failed to produce

evidence showing a "a history of widespread pain" accompanied by "repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" and evidence that exclude other disorders that could cause these repeated manifestations under the 2010 ACR. Id. at *3. Moreover, in his Disability Report, Plaintiff listed multiple physical and mental conditions he alleged limited his ability to work, but he did not allege that fibromyalgia was one such condition. (Tr. 220). Thus, Plaintiff failed to provide the requisite evidence to establish that he had a medically determinable impairment of fibromyalgia.

**2. The RFC Accounts for Any Functional Limitations During the Relevant Period Stemming from Plaintiff's History of a Back Impairment.**

Turning to Plaintiff's remote history of degenerative disk disease and PTSD, the ALJ did not address these impairments at step two. However, the ALJ's step two determination was not outcome determinative and any error at this step was harmless because the ALJ found that Plaintiff had at least one severe impairment and proceeded through the subsequent steps in the sequential evaluation process. 20 C.F.R. § 416.920(c); See Shinseki v. Sanders, 556 U.S. 396, 407–10 (2009) (requiring the party attacking an administrative decision to prove that an error harmed her case); Bishop v. Comm'r of Soc. Sec., 583 F. App'x 65, 67 (4th Cir. 2014) (unpublished) ("[A]ny error is reviewed under the harmless error doctrine."); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (affirming despite error because ALJ "would have reached the same result notwithstanding his initial error"). In doing so, the ALJ discussed pertinent evidence and accounts for any relevant functional affects during the relevant period that may be

attributable to Plaintiff's back impairment. When determining the RFC, the ALJ explained how Plaintiff could perform a reduced range of sedentary work despite his impairments. (Tr. 20–25).

As relevant here, sedentary work requires no more than occasional standing and walking, i.e., walking for up to one third of an eight-hour workday, which amounts to less than three hours. 20 C.F.R § 416.967(a). Plaintiff fails to identify any evidence from during the relevant period that shows his musculoskeletal impairments limited his ability to perform work activity beyond the assessed RFC. In contrast to Plaintiff's argument, the ALJ evaluated Plaintiff's positive and negative findings upon imaging studies and physical examinations during the relevant period, as well as Plaintiff's subjective reports of pain and difficulty performing exertional and postural activities. (Pl. Br. 13, 15–16; Tr. 20–25, 410, 427–38, 494–96). However, the ALJ concluded that Plaintiff's reported symptoms were not entirely consistent with the evidence in the record and he explained his rationale. (Tr. 20, 40, 238). As this Court has held "[t]he case law is clear that an ALJ's failure to list a particular impairment as 'severe' during the step-two analysis does not require remand so long as the sequential evaluation continues and the functional effects of any absent impairment are appropriately examined and considered during subsequent steps." Torres v. Colvin, No. 1:14-cv-00007-RLV, 2016 WL 54933, at *5 (W.D.N.C. Jan. 5, 2016) (internal citations omitted).

Notably, Plaintiff primarily relies on evidence outside of the relevant period to argue that he had debilitating degenerative disc disease. (Pl. Br. 13–14). For example, Plaintiff states that the ALJ "did not fully account" for limitations from his spinal disorder because he did not discuss findings from imaging and a physical examination in 2011 and 2012, nor did he discuss chiropractic records from 2015. (Pl. Br. 17–18; Tr. 545, 548, 555, 727). However, the Commissioner previously considered evidence from this period and determined that Plaintiff was

disabled beginning on March 9, 2012, and his disability ended on March 8, 2016. (Tr. 61). The ALJ considered evidence of Plaintiff's back impairment from shortly before his alleged disability onset date. (Tr. 21). The ALJ stated that March 2017 imaging of Plaintiff's cervical and lumbar spine appeared stable compared to prior imaging, and while there was evidence of mild endplate degenerative changes at one level of his lumbar spine, there was no evidence of bone or joint pathology in his cervical or lumbar spine. (Tr. 21, 416). Despite Plaintiff's reports of worsening neck and back pain and mild lumbar paraspinal tenderness, the ALJ observed objective medical evidence showing that Plaintiff was able to walk without difficulty and exhibited full musculoskeletal range of motion, normal strength, normal muscle tone, and intact sensation. (Tr. 21, 415–16).

Given the inconsistencies between Plaintiff's presentation and the medical evidence, the ALJ determined restricting Plaintiff to sedentary work was sufficient to accommodate any gait difficulties. In assessing the extent to which Plaintiff's symptoms limited his ability to perform work activity, the ALJ noted that in June 2017, Plaintiff stated that he needed a cane to ambulate and alleged that he could not walk more than 200 feet, but three months earlier Plaintiff was observed ambulating without difficulty (Tr. 20–25, 410). Indeed, Plaintiff admitted that a medical professional had not prescribed the use of a cane. (Tr. 235). Medical need for a cane cannot be determined by mere observation of a person using a cane at a doctor's office. See Wimbush v. Astrue, 4:10CV36, 2011 WL 1743153, at *2-3 (W.D. Va. May 6, 2011) (finding that a cane was not medically necessary where doctors observed that the plaintiff's gait was normal on several occasions) (internal quotation omitted). Nonetheless, the ALJ acknowledged that in November 2017, Plaintiff reported experiencing worsening hip pain, continued to use a cane to ambulate, exhibited limited range of motion in his left hip with a limping gait, and had

decreased strength in his left leg. (Tr. 22, 494–95). However, apart from showing evidence of Plaintiff's prior left total hip arthroplasty, imaging of Plaintiff's left hip did not show any other significant abnormalities. (Tr. 22, 496). Coupled with the objective and diagnostic findings, Plaintiff's positive treatment response, as discussed below, suggested that his cane use was not medically necessary.

The ALJ also considered Plaintiff's reports alongside the medical evidence showing controlled symptoms and improved exertional functions with treatment. (Tr. 22, 25, 461, 514, 521, 528). The ALJ explained:

> The combination of [Plaintiff's "osteoarthritis in his back, his hip replacement, and his obesity"] restrict his mobility to some degree as shown on the objective examinations, above. However, greater limitations are not warranted because the claimant has not shown acute episodes that required additional care and he has apparently been successful medically managed with medication given the lack of corresponding care or observed worsening symptoms.

(Tr. 25). Gross, 785 F.2d at 1166 (noting that a symptom that can be reasonably controlled by medication or treatment is not disabling). The ALJ described how Plaintiff's musculoskeletal conditions improved with treatment, noting that in January 2018, Plaintiff admitted that he felt Vitamin D helped to alleviate his joint pain and he denied any muscle aches and pain. (Tr. 22, 461). As the ALJ observed, Plaintiff's musculoskeletal symptoms improved and by June 2018, Plaintiff ambulated without difficulty and without the need for a cane, he denied experiencing pain, and he exhibited normal range of motion in his extremities with no evidence of deformities. (Tr. 22, 427, 438). Subsequently, in January 2019, during a follow-up visit with Dr. Osei-Nkansah, Plaintiff did not report experiencing any significant musculoskeletal symptoms such as pain. (Tr. 23, 807). Accounting for Plaintiff's symptoms of pain and his observed functional deficits, as well as his improved functioning, the ALJ determined that Plaintiff could perform a range of sedentary work. (Tr. 20).

Importantly, while Plaintiff disagrees with the ALJ's finding, he does not identify specific functions related to his ability to work that the ALJ did not address. Cf. Dowling v. Commissioner, 986 F. 3d 377 (4th Cir. 2021). Furthermore, although Plaintiff asserts the ALJ should have considered evidence already reviewed in the March 2017 decision and adopt the prior findings, he ignores that the March 2017 decision provides for less restrictive RFC limitations. (Pl. Br. 13–14, 16–18; Tr. 17, 20, 63, 68). Indeed, the ALJ in this case determined that Plaintiff could never climb ladders, ropes, or scaffolds or crawl, whereas the prior ALJ determined that Plaintiff could perform no more than occasional climbing and crawling. (Compare Tr. 20 with Tr. 68). Therefore, the ALJ's RFC determination adequately accounts for all of his physical impairments and limitations.

**3. The RFC Accounts for any Functional Limitations During the Relevant Period Stemming from Plaintiff's History of PTSD.**

With respect to his mental RFC limitations, Plaintiff asserts that the ALJ did not consider his history of PTSD. However, a diagnosis alone is not sufficient to establish disability under the Act, rather, the impairment must be accompanied by functional limitations which render the claimant unable to work. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990); Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Here, the ALJ carefully examined the medical evidence pertaining to Plaintiff's mental impairments during the relevant period, included corresponding RFC limitations to account for observed deficits, and provided an extensive analysis to explain his conclusions. (Tr. 18–20, 22–25). Cf. Mascio, 780 F.3d at 636–38 (remanding the ALJ's decision where the ALJ "ignor[ed] (without explanation) [the claimant's] moderate limitation in concentration, persistence, or pace" resulting in an unexplained inconsistency between the step three findings and the RFC assessment, which included no

-12-

limitation related to those earlier findings). Based on his assessment of the evidence, the ALJ determined that Plaintiff could sustain concentration to perform simple, routine, repetitive tasks. (Tr. 20). The ALJ explained that Plaintiff's mental symptoms did not warrant restrictions beyond those in the RFC "given [Plaintiff's] report of success with therapy and demonstrated stability with medication management." (Tr. 25). Mickles, 29 F.3d at 930 (inconsistencies between the claimant's allegations and the treatment sought to alleviate that condition is highly probative). Thus, any error at step two pertaining to Plaintiff's history of PTSD is harmless.

Contrary to Plaintiff's contention, the ALJ assessed Plaintiff's cognitive difficulties and acknowledged that Plaintiff reported difficulty with his memory, concentration, understanding and following instructions, and completing tasks. (Pl. Br. 15; Tr. 20, 48, 234). However, the ALJ observed that on multiple occasions during the relevant period, Plaintiff's mental status examinations revealed that he had coherent, logical, and goal-directed thought processes, appropriate fund of knowledge, adequate attention and concentration, and his memory was intact. (Tr. 21–22, 367–68, 522, 529). Additionally, as Plaintiff admitted, he responded appropriately to treatment and his mental symptoms were controlled. (Tr. 22, 514, 521, 528). Gross, 785 F.2d at 1166 (noting that a symptom that can be reasonably controlled by medication or treatment is not disabling). In fact, even when Plaintiff reported experiencing worsening symptoms, his mental status examination revealed that he had normal attention and concentration, normal thought content and flow, and he was cooperative. (Tr. 504). Despite his allegations, Plaintiff's treating provider, Jay Bryner, PA-C, determined that Plaintiff's symptom exacerbation did not warrant any modification of his treatment regimen. (Tr. 23, 503–04).

Notably, Plaintiff again primarily relies on evidence outside the relevant period to assert that his symptoms warranted additional functional limitations. (Pl. Br. 9–13). Such evidence has

little bearing on his functional abilities during the period issue where current records demonstrate that his condition improved and stabilized with treatment.

Plaintiff argues that the ALJ improperly evaluated medical opinions from Psychiatric Nurse Practitioner Melissa Hall and Physician Assistant Bryner in assessing his mental RFC. (Pl. Br. 11–13). However, the ALJ assessed the persuasiveness of the medical opinions pursuant to the regulations and explained his rationale. (Tr. 24–25). 20 C.F.R. § 416.920c. Ultimately the ALJ determined that Psychiatric Nurse Practitioner Hall's opinion was outside the period at issue, was not well supported, and inconsistent with other evidence in the record. (Tr. 25, 381–89). As for Physician Assistant Bryner's opinion, the ALJ concluded that his opinion was not supported by his clinical notes and was inconsistent with other evidence in the record (Tr. 24–25, 535–37). The ALJ identifies what evidence he is referring when discussing the longitudinal medical records to evaluate Plaintiff's symptoms prior to discussing his opinion rationale.

Specifically, when assessing Psychiatric Nurse Practitioner Hall's opinion, the ALJ explained that Ms. Hall provided her opinion after only four months of treating Plaintiff and had not had the benefit of reviewing Plaintiff's mental health records from the relevant period. (Tr. 25, 381–89, 391–98, 401–08, 803–06). 20 C.F.R. § 416.920c(c)(2), (3)(i). Additionally, Ms. Hall's treatment records offer little, if any, objective findings that demonstrate the extremely impaired cognitive or adaptive functioning she describes in her opinion. 20 C.F.R. § 416.920c(c)(1). See Clark v. Colvin, No. 5:13-cv-00157-GCM, 2014 WL 7005366, at *4 (W.D.N.C. Dec. 11, 2014) (ALJ properly discounted an opinion in part because the physician's own notes did not support it). For example, as the ALJ points out, Ms. Hall's opinion that Plaintiff had "marked" restrictions maintaining concentration persistence or pace and "often" had a poor ability to concentrate, focus, and/or pay attention was inconsistent with evidence showing

-14-

that during the relevant period Plaintiff had generally unremarkable mental status examinations and his mental health symptoms were well controlled. (Tr. 21–22, 25, 367–68, 514, 521–22, 528–29). 20 C.F.R. § 416.920c(c)(2). While Ms. Hall indicates that Plaintiff can complete daily living skills but he "needs assistance," the record does not demonstrate marked or extreme limitation in adaptive functioning. (Pl. Br. 11; Tr. 407). Notably, in the same treatment note, Ms. Hall observed that Plaintiff was mentally stable, as he presented with a euthymic mood; demonstrated coherent, logical, and goal directed thought processes; had adequate concentration; demonstrated intact memory and judgment; and demonstrated "good" insight. (Tr. 407). While the ALJ acknowledged Plaintiff reported requiring assistance to manage his personal care and perform some household chores, the ALJ also noted that Plaintiff admitted he was able to wash less than a sink full of dishes at one time, go out alone, drive a car, and shop in stores for food, suggesting retained adaptive functioning despite some deficits. (Tr. 23, 40, 51, 232).

Similarly, the ALJ thoroughly evaluated the persuasiveness of Physician Assistant Bryner's opinion and explained that the opinion relied heavily on Plaintiff's subjective reports and other evidence in the record failed to support the severity of the limitations assessed. (Tr. 24–25, 535–37). Like the ALJ's assessment of Ms. Hall's opinion, the ALJ points out that Mr. Bryner's opinion is inconsistent with Plaintiff's unremarkable mental status examinations. (Tr. 21–22, 25, 367–68, 514, 521–22, 528–29, 536; 20 C.F.R. § 416.920c(c)(2)).

Mr. Bryner's opinion also conflicts with his treatment notes, undermining the supportability of the opinion. 20 C.F.R. § 416.920c(c)(1). For instance, one month before opining Plaintiff had marked limitations understanding and remembering detailed instructions and extreme limitations carrying out detailed instructions, Mr. Bryner indicated that despite missing a prior appointment and running out of medication, Plaintiff's mental status was normal

as his examination revealed "normal" attention and concentration, "normal" flow of content, and "normal" content of thought" (Tr. 503–04, 536). Mr. Bryner opined Plaintiff had marked limitations making judgments on simple work-related decisions and marked to extreme limitations responding appropriately to supervision, co-workers, and work pressures in a work setting because of lack of insight, mood dysregulation, and anxiety. But in contrast, Mr. Bryner's treatment notes reveal Plaintiff exhibited "normal" insight and judgment, "normal" mood and affect, and he was cooperative. (Tr. 504, 536). Moreover, as Plaintiff admitted to Mr. Bryner, his medication regimen, as well as his coping mechanisms allowed him to "manage his anxiety." (Tr. 503).

Given Plaintiff's mental stability and positive treatment response, Mr. Bryner determined that Plaintiff was "responding appropriately to treatment" and stated that he would continue Plaintiff on his medications at the same previously prescribed doses, which was inconsistent with the marked to extreme limitations he assigned Plaintiff. (Tr. 509, 536).

Although Plaintiff disagrees with the ALJ's evaluation of the medical opinions, he fails to identify a specific error that would warrant remand.[3] See Lemmonds v. Berryhill, No. 3:16-CV-120-RLV-DCK, 2017 WL 9516603, at *5 (W.D.N.C. Feb. 21, 2017) ("Plaintiff clearly disagrees with the ALJ's decision, but fails to offer any persuasive argument or authority that the ALJ did

---

[3] Aside from arguing that the ALJ should have determined Plaintiff had "limitations associated with PTSD," because Psychiatric Nurse Practitioner Hall diagnosed him with this condition, Plaintiff fails to raise specific challenges to the ALJ's assessment of the opinions of Psychiatric Nurse Practitioner Hall or Physician Assistant Bryner. (Pl. Br. 9–13, 16). A party "waives an argument by… failing to develop its argument—even if its brief takes a passing shot at the issue." Halperin v. Saul, 855 Fed. Appx. 114, 120 n.8 (4th Cir. Apr. 6, 2021) (unpublished) (internal citations omitted).

not follow the proper legal standards and/or did not rely on substantial evidence in reaching his determination"). "[A]bsent some indication that the ALJ has dredged up 'specious inconsistencies'" or failed to provide the required rationale, this Court must defer to the ALJ's assessment. See Dunn v. Colvin, 607 Fed. App'x 264, 267 (4th Cir. 2015) (internal citations omitted); see also Walton v. Saul, No. 3:19-CV-401-DCK, 2020 WL 6153247, at *5 (W.D.N.C. Oct. 20, 2020) (stating that even if Plaintiff disagrees with the ALJ's evaluation of the opinion evidence, as long as "'the ALJ applied the correct law and supported her findings with substantial evidence…. [i]t is not for this Court to re-weigh the evidence considered by the ALJ'").

**4. The ALJ appropriately considered the Commissioner's prior decision that found Plaintiff was no longer disabled as of March 2016.**

In a March 2017 continuing disability review (CDR) decision, the Commissioner determined that Plaintiff's disability ended as of March 1, 2016. (Tr. 61–76). In the Fourth Circuit, the ALJ must consider any prior final disability determination or decision as evidence when determining disability on a subsequent application involving an unadjudicated period. AR 00-1(4) 2000 WL 43774 (Jan. 12, 2000) (discussing Albright v. Comm. of Soc. Sec. Admin., 174 F.3d 473, 477–78 (4th Cir. 1999) (interpreting Lively v. Secretary of HHS, 820 F.2d 1391 (4th Cir. 1987)). Here, the ALJ explained that he "reviewed the prior evidence" and acknowledges the Commissioner's prior decision. (Tr. 20, 58–83). Notwithstanding, the Commissioner's prior administrative findings, the ALJ determined that his physical and mental impairments restricted him to a range of unskilled sedentary work. (Tr. 20).

Plaintiff misconstrues the law to argue that the ALJ "was required" to accept prior findings that Plaintiff had medically determinable impairments of PTSD and degenerative disc

disease or explain why he did not adopt these findings. (Pl. Br. 16-17 (citing AR 00-1(4) 2000

WL 43774 (Jan. 12, 2000))). However, an ALJ is "not bound to adopt [prior] findings verbatim

but must consider the prior findings and assign a weight to such findings." Manuel v. Colvin, No.

1:11-CV-8, 2015 WL 519481, at *5 (M.D.N.C. Feb. 9, 2015) (citing Albright, 174 F.3d at 477–

78), rep. & recomm. adopted, J. (Mar. 5, 2015); see also Barbee v. Colvin, No. 5L14-CV-424-D,

at *7 (E.D.N.C. Aug. 7, 2015) (citing Manuel, 2015 WL 519481, at *5); McCray v. Colvin, No.

1:15-CV-951, at *1 (M.D.N.C. Jan. 6, 2017) (citing Manuel, 2015 WL 519481, at *5). As long

as the ALJ "consider[ed] the prior ALJ's findings as part of the reviewing record," he did not

have to "specifically refer to AR 00-1(4)" or "explain the precise weight he gave the [prior]

findings." (Pl. Br. 16-17). Melvin v. Astrue, 602 F. Supp. 2d 694, 702 (E.D.N.C. Feb. 6, 2009)

(internal citations omitted). Thus, the ALJ complied with the requirements in Albright under AR

00-1(4). Melvin, 602 F. Supp. at 702 (Where an ALJ considers a plaintiff's recent application for

benefits, applies the governing legal standard, but ultimately rejects the application, he has

complied with the requirements of Albright and AR 00-1(4)).

  Overall, the ALJ's assessed RFC limitations account for Plaintiff's physical and mental

impairments to the extent the ALJ found them consistent with and supported by the evidence.

Furthermore, the ALJ properly evaluated and accounted for the medical opinions from Ms. Hall

and Mr. Bryner and considered the Commissioner's prior decision. As discussed below, the ALJ

also thoroughly evaluated Dr. Osei-Nkansah's medical opinion in assessing the RFC. Where an

ALJ crafts evidence based on assessments of a claimant's physical and mental abilities, the

substantial evidence standard compels deference. Biestek, 139 S. Ct. at 1151–54.

  In sum, for the reasons stated herein, substantial evidence supports the ALJ's mental-

RFC finding. Thus, Plaintiff's first assignment of error is overruled.

**B. The ALJ's analysis identifies the evidence the ALJ refers to when concluding that Dr. Osei-Nkansah's opinion was not supported by or consistent with the record.[4]**

As an initial matter, for claims filed on or after March 27, 2017—such as Plaintiff's claim here—regulation 20 C.F.R. § 416.920c applies. The regulation explains the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). While the ALJ must articulate how he considered the medical opinions, there are no particularized procedures that the ALJ must follow in considering opinions from treating sources (e.g., requirement that adjudicators must "give good reasons" for the weight given a treating source opinion). Compare 20 C.F.R. § 416.927(c)(2) with 20 C.F.R. § 416.920c(b) (2017). Rather, the ALJ focuses on the persuasiveness of the medical opinion(s) or prior administrative medical finding(s) while considering five regulatory factors. See 20 C.F.R. § 416.920c(a)-(c).

Of the five factors, the ALJ must explain how he considered the factors of supportability and consistency, which are the two most important factors in determining persuasiveness. 20 C.F.R. § 416.920c(b)(2). When determining whether an ALJ's rationale is sufficient, this Court

---

[4] On January 18, 2017, the agency published revisions to its regulations regarding the evaluation of medical evidence effective March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). The revised regulations redefine how evidence is categorized. The regulations specify five categories of evidence: (1) Objective medical evidence, (2) medical opinion, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. See 20 C.F.R. § 416.913(a) (2017). As discussed in this memorandum, several important regulatory changes apply strictly to claims filed on or after March 27, 2017. See, e.g., 20 C.F.R. § 416.920c (2017) (explaining how an adjudicator considers medical opinions for claims filed on or after March 27, 2017).

considers the ALJ's entire decision on review. See Bramblett v. Colvin, 2:14-CV-00011-RLV, 2016 WL 1249297, at *5–*6 (W.D.N.C. Mar. 30, 2016) (finding that an ALJ's prior discussion of the medical evidence provides valuable insight regarding how he evaluated the medical opinions); see also McCartney v. Apfel, 28 F. App'x 277, 279 (4th Cir. 2002) (agreeing with the district court that "the ALJ need only review medical evidence once in [the] decision").

Moreover, as this Court recently held, even where "the ALJ's analysis could be more descriptive" the court may find it sufficient to address the consistency and supportability factors. Hillman v. Kijakazi, No. 1:20-CV-00237-MOC, 2021 WL 3824685, at *6 (W.D.N.C. Aug. 26, 2021).

In assessing the RFC, the ALJ ultimately determined that Dr. Osei-Nkansah's opinion was "not well supported" and "inconsistent" with other evidence in the record. (Tr. 25). While Plaintiff relies on Monroe, 826 F.3d at 188, to argue that the ALJ did not "explain why he believed Dr. Osei-Nkansah's" opinion was not persuasive, here the ALJ conducted the exact type of analysis that the Fourth Circuit found lacking in Monroe. (Pl. Br. 20–21). The ALJ discussed specific evidence that undermined the persuasiveness of Dr. Osei-Nkansah's opinion. For instance, the ALJ explained that Dr. Osei-Nkansah provided her opinion prior to the relevant period. (Tr. 25, 789–90). A medical source's familiarity with the longitudinal record is probative when evaluating the persuasiveness of his or her opinion. 20 C.F.R. § 416.920c(c)(5) (In assessing "a medical source's familiarity with the other evidence in a claim, we will also consider [] new evidence we receive after the medical source made his or her medical opinion"). Additionally, as the ALJ points out, Dr. Osei-Nkansah's opinion was "based heavily" on Plaintiff's subjective reports. (Tr. 25). It is well established that an ALJ "may…discount medical opinions for excessive reliance on a claimant's subjective statements." Thompson v. Berryhill,

-20-

No. 4:18-CV-133-FL, 2019 WL 2980030, at *6 (E.D.N.C. Apr. 22, 2019) (citing <u>Mastro v.</u>

<u>Apfel</u>, 270 F.3d 171, 178) (4th Cir. 2001)), rep. & recomm. adopted sub nom. <u>Thompson v. Saul</u>,

No. 4:18-CV-133-FL, 2019 WL 2932736 (E.D.N.C. July 8, 2019). Less than

one week before Dr. Osei-Nkansah provided her opinion, Plaintiff told her that he needed to

have his disability recertified, admitted that he had not been compliant with medication, and

alleged difficulty concentrating. (Tr. 322). Despite Plaintiff's reported concentration difficulties,

Dr. Osei-Nkansah indicated that Plaintiff exhibited an appropriate mood and affect, his judgment

and thought processes were intact, his speech was normal, and there was no evidence of

agitation. (Tr. 322). Plaintiff's generally unremarkable mental status examination does not

support Dr. Osei-Nkansah's opinion that Plaintiff's symptoms were "often" severe enough to

interfere with his attention and/or concentration. (Tr. 25, 789–90).

    The ALJ also noted that Plaintiff's reports of controlled symptoms and his generally

unremarkable mental status examinations during the relevant period contradict Dr. Osei-

Nkansah's opinion. (Tr. 21–22, 25, 367–68, 514, 521–22, 528–29). Indeed, Plaintiff

acknowledged that his treatment was effective in improving and controlling his symptoms. (Tr.

22, 514, 521, 528). <u>Gross</u>, 785 F.2d at 1166. In fact, in January 2019, Dr. Osei-Nkansah noted

that Plaintiff admitted that his mood was "well controlled," and she observed that his judgment

was intact and he was alert and fully oriented. (Tr. 807–08). <u>See</u> <u>Clark</u>, 2014 WL 7005366, at *4

(ALJ properly discounted an opinion in part because the physician's own notes did not support

it). Accordingly, the ALJ's decision adequately explains how the ALJ considered the

supportability and consistency factors when finding Dr. Osei-Nkansah's opinion unpersuasive.

    Nevertheless, the ALJ is not required to rely on any medical opinion or prior

administrative medical finding when determining the RFC. <u>See</u> 20 C.F.R. § 416.920c(a); <u>see also</u>

Felton-Miller v. Astrue, 459 Fed. App'x 226, 230–31 (4th Cir. 2011) (unpublished); Jackson v. Comm'r, Soc. Sec., No. CCB-13-2086, 2014 WL 1669105, at 2 (D. Md. Apr. 24, 2014) (an ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment."). It is the responsibility of the ALJ, and only the ALJ, to assess a claimant's RFC. 20 C.F.R. § 416.946(c). Indeed, the RFC determination is a legal decision rather than a medical one, and the development of a claimant's RFC is solely within the province of the ALJ who considers "all of the relevant medical and other evidence" when making a finding. 20 C.F.R. § 416.945(a)(3); see also 20 C.F.R. §§ 416.920c(a), 416.946(c). The Court should defer to the ALJ's evaluation because he considered and evaluated Dr. Osei-Nkansah's medical opinion consistent with the regulations and supported his conclusions with substantial evidence. Biestek, 139 S. Ct. at 1151–54; see also Mode v. Saul, No. 5:20-cv-63, 2021 WL 2593809 *3 (W.D.N.C. June 24, 2021) ("But while Plaintiff may disagree with how the ALJ characterized these experts' opinions, there can be no doubt that the ALJ considered the evidence").

In sum, for the reasons stated herein, the ALJ properly explained how he considered the supportability and consistency factors when evaluating the medical opinion from his primary care provider, Elssie Osei-Nkansah, M.D. Thus, Plaintiff's second assignment of error is overruled.

### C.    Plaintiff's Constitutional Challenge to the ALJ's Decision

Finally, in response to Plaintiff's request, the Court allowed the parties to submit additional briefing on Plaintiff's claim that the ALJ's decision was constitutionally defective because the Social Security Act provision limiting the President's authority to remove the Presidentially appointed, Senate-confirmed Commissioner of Social Security without good

cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. For the reasons stated in Defendant's brief in opposition, this final challenge is without merit. More specifically, as Defendant notes, 42 U.S.C. § 902(a)(3) does not apply to the denial of Plaintiff's disability claim—in part because the ALJ who issued that decision was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. Rather, the ALJ had her appointment ratified by an Acting Commissioner of Social Security—whom the President could have removed from that role at will, at any time.

Second, Plaintiff argues that Social Security ALJs' own statutory removal protection under 5 U.S.C. § 7521 constitutes a distinct separation of powers violation. That argument is meritless as well. The "good cause" standard that applies to the removal of agency ALJs provides the Executive with sufficient control and direction over these purely adjudicatory decision makers.

Finally, as the Supreme Court recently held in <u>Collins v. Yellen</u>, 141 S. Ct. 1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief must show that the restriction actually caused him harm. Here, Plaintiff offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. Plaintiff simply argues that all actions taken by the Commissioner–and in turn his appointed ALJ's—are void due to the unconstitutional removal provision. However, <u>Collins</u> expressly rejected this view. Thus, the final decision of the ALJ is not constitutionally defective.

## VI.     Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments

of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

    (1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

    (2) Plaintiff's Motion for Summary Judgment, (Doc. No. 17) is **DENIED;**

    (3) The Commissioner's Motion for Summary Judgment, (Doc. No. 22) is **GRANTED;** and

    (4) This action is **DISMISSED.**

Signed: February 4, 2022

Max O. Cogburn Jr.
United States District Judge